Harold M. Levy v. Commissioner.
Levy v. Commissioner
Docket No. 5375.
United States Tax Court
1945 Tax Ct. Memo LEXIS 156; 4 T.C.M. (CCH) 641; T.C.M. (RIA) 45211; June 20, 1945
*156 Charles Kurz, C.P.A., 285 Madison Ave., New York 17, N. Y., for the petitioner. William F. Evans, Esq., for the respondent. SMITH
Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of a deficiency in income tax for the calendar year 1941 in the amount of $3,976.63, nearly all of which deficiency is contested. The petitioner alleges that the respondent erred in the determination of the deficiency by disallowing the deduction from gross income of $10,123.31 "representing the special interest of Miriam Levy in the net profit for that calendar year of a business conducted in the name of the petitioner." Findings of Fact The petitioner is a resident of New York City. He filed his income tax return for 1941 with the collector of internal revenue for the second district of New York. From approximately 1924 to 1929 the petitioner was in the employ of Charles J. Levy Co., of which his father Charles J. Levy, was one of the partners. He left that employment in 1929 and was a glove salesman for several manufactures for a period of about two years. He then began buying small lots of gloves which were disposed of through basement *157 outlets of department stores. In 1933 he had a conversation with his mother, Miriam Levy, relative to her financing him in that business. She lived at 808 Avenue J. Brooklyn, N. Y. The petitioner had no money at the time. His father was out of work. He had formerly been a successful merchant and was a director of a bank which failed. Judgments were obtained against him as a result of the failure of the bank. It was impracticable for him to open a business in his own name. Petitioner's mother had money. The petitioner proposed the purchase of odd lots of gloves which could be stored in his parent's home until they could be sold. An arrangement was made with his mother whereby she agreed to finance the business up to an amount of $20,000. There was a definite agreement between petitioner and his mother that the profits of the business should be divided equally between them after the allowance of a salary to the petitioner. Petitioner's mother advanced $700 to start the business. The petitioner's father was soon engaged to interview the customers who called to see the goods and to act as "inside man." The petitioner was to contact the trade and act as "outside man." Before the end of *158 1933 the business was removed to 640 Broadway, New York City, where it has since been located. The advances to the business made by petitioner's mother up to December 31, 1936, amounted to $14,630, and to December 31, 1940, amounted to $19,986.69. For all advances made by her the petitioner gave demand notes upon which no interest was ever paid. The business was always conducted under the name of Harold M. Levy. No articles of copartnership were ever signed by him and his mother. No certificate was ever filed with the County Clerk or Clerk of the Supreme Court of New York County prior to December 31, 1941, showing that the business conducted in the name of the petitioner was a partnership. No partnership returns were ever filed for 1941 or prior years. The profits of the business during all these years were very nominal permitting only small salaries to the petitioner and his father. The accumulated profits of the business to December 31, 1940, amounted to only $8,336.69. The petitioner in his individual income tax returns through 1940 accounted for all profits realized, including his own salary, and no part of the profits was reported by his mother. In 1937 Leynard Berger was *159 employed as bookkeeper and office manager. He had had some experience in bookkeeping. He found the books of the business very crudely kept. Advances which had been made to the business by petitioner's mother, and also certain amounts paid into the concern by the petitioner, were shown as notes payable. In 1937 petitioner paid into the business $1,176.96 for which he received a note signed by himself. This note was of the same character as the notes which the petitioner had given to his mother for advances made by her. Leynard Berger invested $3,000 in the business in 1938, upon the condition that in lieu of interest he should be paid 6 percent of the net profits of the business. In 1937 the petitioner had negotiations with David Robinson, a jobber of gloves, with reference to his putting capital into the business and becoming a partner. Petitioner told him that his mother was then a partner in the business and that it would be necessary for him to have $20,000 with which to buy out his mother's interest. Since he did not have that amount of cash the negotiations were broken off. The year 1941 was the first year in which the business had a good profit. Leynard Berger inquired *160 at the collector's office about what returns should be filed for 1941, representing that petitioner's mother had a 50 percent interest in the profits of the business. He was told that inasmuch as no certificate of partnership had been filed with the state authorities showing that the business conducted under the name of the petitioner was a partnership, the petitioner should show in his return the total operations of the business and claim a deduction from gross income of the amount of the profits that belonged to his mother and that she should file a separate return accounting for those profits. The amount of the profits computed as belonging to petitioner's mother was $10,123.31 and that amount was deducted from the petitioner's gross income and returned for taxation by his mother. This deduction was disallowed by the respondent in the determination of the deficiency. Opinion The question presented by this proceeding is whether the petitioner is taxable upon the entire net income of a business conducted in his name or only upon his salary plus one-half of the remaining net profits. It is the petitioner's contention that by reason of the agreement which he made with his mother *161 in 1933 for the furnishing of capital one-half of the net profits of the business belonged to her. They were so reported by her for income tax for 1941. Section 3797, Internal Revenue Code, defines a partnership as follows: SEC. 3797. DEFINTIONS. (a) * * * (2) Partnership and Partner. - The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. It is the respondent's contention that no agreement existed between the petitioner and his mother whereby she was to receive 50 percent of the net profits of the business. He points to the facts that: (1) No written articles of copartnership were ever signed by the petitioner and his mother and that no other writing evidencing the agreement was offered in evidence; (2) The business was never registered with the New York State authorities as a partnership being conducted under *162 a fictitious name; (3) No partnership returns were ever filed with the collector of internal revenue; (4) The books of account were not kept to show the mother as a partner; (5) None of the profits of the business was ever paid over to the mother; and (6) The accumulated profits of the business to December 31, 1940, were shown by the books as belonging to the petitioner. In should be noted that the term "partnership" under the Code definition has a very broad connotation. A joint venture is taxable as a partnership. The respondent contends that the evidence simply shows that petitioner's mother, Miriam Levy, loaned petitioner money to start a business and that she was never anything more than a creditor with respect to such loans. We are satisfied, however, from a consideration of all of the evidence that there was a definite agreement between the petitioner and his mother made in 1933 that she should have a 50 percent interest in the net profits of the business in consideration of her furnishing capital for the business. Petitioner and his mother both testified to such an agreement. The notes which were given by the petitioner to his mother evidencing her advances to the *163 business were demand notes which bore no interest and no interest was ever paid on them. It was known to those who dealt with the petitioner that his mother had an interest in the business. We are satisfied that there was a joint venture between the petitioner and his mother and that under the agreement the mother was entitled to receive one-half of the profits. We think the evidence establishes that petitioner's mother was entitled under her agreement with the petitioner to one-half of the profits of the business as a return on her investment in the business and that she was a joint adventurer. Decision will be entered under Rule 50.